**COASTAL CARTING LTD., INC., Plaintiff,**

v.

**BROWARD COUNTY, FLORIDA, et al., Defendants.**

**No. 96–7175–C.V.**

United States District Court, S.D. Florida.

May 5, 1999.

Conrad & Scherer, P.A., Albert L. Frevola, Jr., Dominic L. Brandy, Ft. Lauderdale, FL, for Resource Recovery Board and Broward County.

Broward County Attorney's Office, Edward Dion, County Attorney, Noel M. Pfeffer, Deputy County Attorney, Ft. Lauderdale, FL, Co–Counsel for Broward County.

Valerie Settles, Coral Gables, FL, Co–Counsel for Resource Recovery Board.

Johnson, Anselmo, Murdoch, Burke & George, P.A., E. Bruce Johnson, Christine Duignan, Ft. Lauderdale, FL, for Cities of Coconut Creek, Cooper City, Coral Springs, Hillsboro Beach, Lauderdale–By–The–Sea, Lazy Lake, Lighthouse Point, Margate, North Lauderdale, Pembroke Park, Plantation, Sea Ranch Lakes, Sunrise, Tamarac, Wilton Manors, and the Town of Davie, Deeyield Beach.

Dennis E. Lyles, City Attorney, Michael J. Pawelczyk, Asst. City Attorney, Ft. Lauderdale, FL, for City of Fort Lauderdale.

Daniel L. Abbott, City Attorney, Tamie Alvarez, Richard T. Kilgore, Sr. Asst. City Attorney, Hollywood, FL, for City of Hollywood.

Fertig and Gramling, Merryl S. Haber, Darlene Lidondici, Ft. Lauderdale, FL, for City of Lauderdale Lakes.

Haliczer, Pettis & White, Eugene K. Pettis, Ft. Lauderdale, FL, for City of Lauderhill.

Weiss, Serota, Helfman, Pastoriza & Guides, P.A., Jamie Alan Cole, Doug Gon-

zalez, Ft. Lauderdale, FL, for City of Miramar.

Rogers, Morris & Ziegler, Romney C. Rogers, Vincent Andreano, Ft. Lauderdale, FL, for City of Oakland Park.

## ORDER

GONZALEZ, District Judge.

THIS CAUSE has come before the Court upon Plaintiff Coastal Carting's Motion for Summary Judgment. The Court has considered the record and the oral argument of able counsel.

Coastal Carting, a solid waste hauler, has brought this action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and § 2202, against Broward County; twenty-three municipalities in Broward County; and the Resource Recovery Board of Broward Solid Waste Disposal District( collectively the Defendants) alleging that Broward County Ordinances 87–3 and 87–4 are unconstitutional and unenforceable.

## BACKGROUND:

This case is about garbage and the disposal thereof.

The Defendants, like other local governments, are and have been faced with the major problem of safe solid waste disposal. Broward County's solution to the solid waste disposal problem was the adoption of Ordinances 87–3 and 87–4, creating the Broward Solid Waste Disposal District. The Broward Solid Waste Disposal District was established to provide for the disposal of solid waste collected in the unincorporated areas of Broward County and within the contract communities.

In accordance with Florida Statutes 125.01(5) and the Interlocal Agreement, the Broward Solid Waste Disposal District is a special district including twenty-three municipalities and the unincorporated area of Broward County. The Resource Recovery Board is the governing body of the Disposal District and has the duties of establishing tipping fees and other charges.

The twenty-four governmental entities entered into an Interlocal Agreement. Broward, Fla., Interlocal Agreement Art. 5 (1987). The ordinances define the Interlocal Agreement as the agreement between the County and the contract communities wherein each of the participating entities shall enact local licensing and other ordinances requiring that waste collected within in Broward County, be disposed of at favored facilities.

Specifically, the Interlocal Agreement provides for the passage of a "flow control ordinance for the purpose of ensuring that the Resource Recovery Facility receives an adequate quantity of solid waste from the solid waste generated within its jurisdiction." The ordinances also dictate that the contract communities will "pay for such services as provided in the Interlocal Agreement." Broward, Fla., Ordinances 87–3 and 87–4 (March 10, 1987). Additionally, the ordinances provide for enhanced "tipping fees, user charges and service charges," and restrict the flow of Broward waste to two named facilities in Broward County.[1]

The effect of the ordinances are such that if a hauler attempts to take waste out

---

1. The flow control ordinance reads in pertinent part:

   3.1 The County shall cause to be constructed, operated, maintained and repaired a resource recovery system located within Broward County for the purpose of disposal of all solid waste collected in each Contract Community and unincorporated County and delivered to the resource recovery system.

   3.3 Each Contract Community and County for the unincorporated area agrees to enact prior to March 31, 1987, a waste flow control ordinance as set forth in Section 403.713, Florida Statutes...directing that all solid waste generated within their respective geographic boundaries be delivered to the resource recovery system transfer or disposal facility or facilities designated in the plan of

of the County, the hauler will face severe fines and penalties.

**STANDARD:**

The Plaintiff has filed a Motion for Summary Judgment asking the Court to declare Broward County Ordinances 87–3 and 87–4 unconstitutional under the Commerce Clause of the Constitution of the United States. U.S. Const. Art. I, § 8, cl. 3.

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and any doubts in this regard should be resolved against the moving party, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548.

After the movant has met its burden under Rule 56(c), the burden of production

shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). According to the plain language of Fed. R.Civ.P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e); *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson,* 477 U.S. 242, 249–50, 106 S.Ct. 2505.

**DISCUSSION:**

As noted, the question presented is whether Broward County Ordinances 87–3 and 87–4 are constitutionally permissible in light of the Commerce Clause of the Federal Constitution.

The Commerce Clause provides that "[t]he Congress shall have Power ... [t]o regulate Commerce ... among the several States." U.S. Const. Art. I, § 8, cl. 3. Though phrased as a grant of regulatory power to Congress, the Clause has long been recognized as a self-executing limita-

operations...Each party agrees to include in any contracts or contract amendments with haulers executed after the date of execution hereof, a provision that all solid waste shall

be delivered to the resource recovery system transfer or disposal facility or facilities designated in the plan of operations...

tion on the power of the states to enact laws imposing burdens on such commerce. *See, e.g., Wyoming v. Oklahoma*, 502 U.S. 437, 453, 112 S.Ct. 789, 800, 117 L.Ed.2d 1 (1992).

For years Courts have mulled over defining the appropriate scope of the Commerce Clause. Particularly in the area of waste disposal cases, the courts have struggled to create a standard for evaluating ordinances that affect the flow of waste in interstate commerce.

■ The general consensus is that the Commerce Clause presumes a national market free from local legislation that discriminates in favor of local interests. *See Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dept. of Natural Resources*, 504 U.S. 353, 112 S.Ct. 2019, 119 L.Ed.2d 139.

The Supreme Court has held that, "[t]he central rationale for the rule against discrimination is to prohibit state or municipal laws whose object is local economic protectionism, laws that would excite those jealousies and retaliatory measures the Constitution was designed to protect." *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 389, 114 S.Ct. 1677, 1682, 128 L.Ed.2d 399(1994).

With that in mind, this Court now evaluates the constitutionality of Broward County Ordinances 87–3 and 87–4.

Coastal maintains that the relevant ordinances violate the Commerce Clause by erecting barriers against the free and unregulated movement of solid waste in interstate commerce by: (1) creating a monopolistic tyranny that prohibits Broward County waste to be transported anywhere outside that County; (2) requiring excessive tipping fees to dump such waste in

Broward County; (3) by charging different rates for garbage collected just outside Broward County but dumped at the same Broward County sites; and (4) by sanctioning and fining Coastal for hauling solid waste outside of Broward County.

The Defendants argue that the purpose of the ordinances is to provide for the safe disposal of solid waste. Defendants further contend that the ordinances do not have any impact on interstate commerce.

More specifically, Defendants argue that because Broward County is located at the extreme southern end of the Florida peninsula, the ordinances do not affect interstate commerce since—absent the ordinances—the waste would still remain in Florida as it would be economically unfeasible to transport the waste out of state.

The court finds that Defendants' reasoning is flawed.

■ Broward County's geographic location does not nullify the impact that the ordinances have on interstate commerce. Furthermore, even though the Defendants allege that their intentions are to dispose of solid waste in a safe manner, good intentions are no substitute for constitutional law. The legislative purposes are irrelevant if the ordinances have the effect of burdening interstate commerce.

■ The ordinances in this case clearly limit the flow of waste in interstate commerce and place Broward County in a position of economic isolation in violation of the Commerce Clause.

The body of waste disposal case law being vast and varied, this Court will focus solely on those cases that the Court deems most relevant and controlling.[2]

---

**2.** For a complete review of Supreme Court waste disposal cases see; *Philadelphia v. New Jersey*, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978); *Chemical Waste Management, Inc. v. Hunt*, 504 U.S. 334, 112 S.Ct.

2009, 119 L.Ed.2d 121 (1992); *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dept. of Natural Resources*, 504 U.S. 353, 112 S.Ct. 2019, 119 L.Ed.2d 139 (1992); *Oregon Waste Systems, Inc. v. Department of Environmental*

In *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dept. of Natural Resources*, the petitioner challenged a Michigan law that prohibited private landfill operators from accepting solid waste originating outside the county where the disposal facilities were located. *Fort Gratiot*, 112 S.Ct. at 2021.

The fact that the law treated waste generated in other Michigan counties no differently from out-of-state waste did not save the law. The Court found that the Michigan law restricted the flow of waste through interstate commerce and held the law unconstitutional. Id. at 2028.

The *Gratiot* Defendant argued that the restriction was *intrastate* and only affected the county. The Court, in response, held that "a State (or one of its political subdivisions) may not avoid the Commerce Clause's strictures by curtailing the movement of articles of commerce through subdivisions of the State, rather than through the State itself." *Id.*

▆ The standard for reviewing the constitutionality of a flow control is set forth in *City of Philadelphia v. New Jersey*, 437 U.S. 617, 624, 98 S.Ct. 2531, 2535–36, 57 L.Ed.2d 475. Applying that standard, a Court first determines whether the statute discriminates on its face by giving economic protection to in-state entities at the expense of out-of-state entities. In other words, the Court first decides whether the law is *per se* invalid. Discrimination against interstate commerce is *per se* invalid, save in a narrow class of cases in which the municipality can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest. *Maine v. Taylor*, 477 U.S. 131, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986).

A statute not *per se* invalid, is then reviewed by applying the *Pike* balancing test. *Pike v. Bruce Church, Inc.* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). Under *Pike*, a court must determine whether an ordinance imposes a burden on interstate commerce that is clearly excessive in relation to the local benefits. The effect of the ordinance is considered only if the ordinance is facially valid.

Defendants here argue that even if Broward County Ordinances 87–3 and 87–4 are unconstitutional in light of the Commerce Clause, the ordinances should still stand because their effect on interstate commerce is insignificant.

They further contend that the ordinances are the least restrictive means available to achieve the goal of safe waste disposal also fails.

Defendants' positions are strikingly similar to those of the Defendants' in *C. & A. Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994). In *Carbone*, the town enacted a flow control ordinance requiring that all solid waste generated in the town be processed at certain designated facilities. *Id.* at 1680. Pursuant to an agreement with the town, a private builder had constructed a waste facility. *Id.* In exchange, the builder was entitled to charge enhanced tipping fees at the designated facility thus guaranteeing the builder a certain amount of revenue. *Id.*

The town argued that the ordinance did not discriminate against out-of-state businesses, but simply required that all non-hazardous waste within the town be deposited at a particular location regardless of who collected the waste. *Id.*

Justice Kennedy, writing for the majority, declared the ordinance facially discriminatory as an economic protectionist measure. *Id.* at 1682.

The *Carbone* Court reasoned that the article of commerce was not the solid

*Quality of Ore.*, 511 U.S. 93, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994); *C & A Carbone, Inc. v.* *Town of Clarkstown, N.Y.*, 511 U.S. 383, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994).

waste, but rather the processing and disposing of the waste. *Id.* The ordinance, therefore, had a discriminatory effect on interstate commerce by restricting the processing and disposal of waste. *Id.* at 1683. The ordinance, by requiring that the waste be processed at a favored local facility, prevented out-of-town or out-of-state businesses from competing in the local disposal market. *Id.*

The Court was unmoved by the town's argument of local health and safety concerns because the regulation clearly presented a barrier to the free flow of interstate commerce and there were less restrictive means to achieve the same goal. *Id.*

The *Carbone* Court further declared that the fatal flaw in the ordinance was that it "hoards solid waste, and the demand to get rid of it, for the benefit of the preferred processing facility." *Id.* at 1683. *See Minnesota v. Barber,* 136 U.S. 313, 10 S.Ct. 862, 34 L.Ed. 455 (1890), *Foster-Fountain Packing Co. v. Haydel,* 278 U.S. 1, 49 S.Ct. 1, 73 L.Ed. 147 (1928), *South-Central Timber Development, Inc. v. Wunnicke,* 467 U.S. 82, 104 S.Ct. 2237, 81 L.Ed.2d 71 (1984).

The Defendants here attempt to distinguish *Carbone* by pointing out that the *Carbone* out-of-state haulers who disposed of their out of state waste in the town were required to pay a higher tipping fee than the haulers that collected waste within the town.

The Broward County ordinances have the opposite effect.

Defendants charge intercounty haulers an $80.00 tipping fee for waste collected in

Broward County. Alternatively, if a hauler picks up waste outside of Broward County, the hauler can dispose of the waste within Broward County for a low tipping fee of $22.00.[3]

The enhanced tipping fee is not the discriminatory element in this case. Rather, it is the fact that Coastal can not take the waste outside of Broward County.

In other words, the real problem in Broward County, which is analogous to the problem in *Carbone,* is that, with respect to the local waste, the ordinance favors two Broward County transfer stations thereby forcing waste haulers to keep the waste in the County while depriving interstate or intercounty interests of access to the local processing market.

In essence, Broward County is hoarding the waste, and the demand to get rid of it, for the benefit of the preferred transfer stations.

The Supreme Court has struck down several similar local processing requirements.[4] As stated earlier, precedent dictates that actions are within the purview of the Commerce Clause if they burden interstate commerce or impede its free flow. *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 31, 57 S.Ct. 615, 621, 81 L.Ed. 893 (1937). Clearly, Ordinances 87–3 and 87–4 impede the free flow of commerce. The restrictions require that Broward County waste remain in Broward County and be processed at the favored facilities.

Defendants' contention that the waste will never enter interstate commerce because it is too expensive for waste haulers to ship Broward waste out-of-state is like-

---

**3.** The Parties have approximated the amount of the tipping fees.

**4.** *See Toomer v. Witsell,* 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948)(declaring as unconstitutional a statute requiring shrimpers to unload, pack, and stamp their fish before shipping it to another state); *Dean Milk Co. v. Madison,* 340 U.S. 349, 71 S.Ct. 295, 95 L.Ed.

329 (1951)(striking down an ordinance requiring that all milk sold within the city be pasteurized within five miles of the city lines); *Pike v. Bruce Church, Inc., supra* (declaring an Arizona statute unconstitutional because it required all Arizona-grown cantaloupes to be packaged within the state).

wise flawed. A county can not pass an unconstitutional ordinance restricting the flow of waste and then argue the ordinance should stand because—in its opinion—it would be economically unfeasible to ship the waste out-of-state. An ordinance that is unconstitutional on its face is *per se* invalid and the analysis need proceed no further.

For the reasons stated, the Court finds that there is no genuine issue of material fact regarding the constitutionality of Ordinances 87-3 and 87-4. The restrictions imposed by Ordinances 87-3 and 87-4 on waste collection and disposal in Broward County violate the Commerce Clause of the United States Constitution and hence are unconstitutional. Summary judgment, therefore, shall be entered on behalf of the Plaintiff, Coastal Carting and against all Defendants.

Accordingly, having reviewed the motion, the record, and being otherwise duly advised, it is hereby:

**ORDERED AND ADJUDGED** that Plaintiff Coastal Carting's Motion for Summary Judgment is **GRANTED.** This Court retains jurisdiction to determine damages, fees and costs. Plaintiff shall file an appropriate form of Final Judgment with the Court within twenty (20) days of the date of this Order.